[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was tried before the Regional Family Trial Docket on referral from the Middlesex Judicial District. The matter was tried over five days. There were several witnesses including both parties, two of the three minor children, the guardian ad litem, the pediatrician for the youngest minor child, a family relations evaluator and the court appointed family psychological evaluator. Many exhibits were entered. The court has considered all the credible evidence presented to it and has carefully considered the respective statutory criteria for orders for custody, visitation and access, child support, health insurance, payment of children's health expenditures, alimony, division of assets and liabilities, as well as award of counsel fees and guardian ad litem fees. The statutory criteria will not be restated here. Also considered is the defendant's motion for contempt dated June 13, 2000. The court makes the following findings of facts and orders.
The court finds that it has jurisdiction over the marriage. One party has lived in the State of Connecticut continuously for more than one year prior to the bringing of this action. The parties were married on July 2, 1982. The following minor children have been born to the wife since the date of the marriage who are issue of the marriage: Delia Bridget born April 23, 1984; James born July 31, 1986; Carmen Melissa born October 17, 1989. No other minor children have been born to the wife since the date of the marriage. Connecticut is the "home state" of the minor children. The parties are not receiving State assistance. The court finds that the marriage between the parties has broken down irretrievably and that there is no reasonable prospect for reconciliation.
The plaintiff mother is seeking sole custody of the minor children with no rights of visitation to the defendant father. At the start of the trial the defendant filed proposed orders seeking sole custody of the children with their primary residence being with the paternal grandparents with both parents having supervised visitation. However, during the trial the defendant amended his proposed orders to mirror the CT Page 12144 recommendations of Keith Roeder, Psy.D. who performed a court-ordered family psychological evaluation. In summary, Dr. Roeder recommended 1) joint custody with final say in decision making to the plaintiff, 2) primary residence with the plaintiff, 3) no immediate visitation to the defendant, 4) family reunification therapy between the defendant and the minor children. The attorney for the children filed proposed orders expressing the wishes of her clients that they not be required to visit with their father. The guardian as litem for the children recommended that the court follow Dr. Roeder's recommendations with two exceptions: 1) the plaintiff mother should have the right to make all parental decisions, other than visitation, without consulting with the defendant, and 2) Delia Bridget should not be required to engage in reunification therapy against her will. For the reasons set forth in this decision, the court is in agreement with the guardian ad litem.
Delia Martinez Duffy is 53 years old. She was born and raised in Puerto Rico where she received a BA degree at Catholic University in 1968. She received a Masters Degree from Central Connecticut State University in 1974 and a 6th Year degree from the University of Connecticut in 1977. She holds five separate teaching certificates in Connecticut and has been employed as a teacher in Connecticut for the past 30 years. Her most recent employment has been at Bulkeley High School in Hartford for the past nine years. Her present salary is $62,000 per year. As a public school teacher she does not contribute to the Social Security system but is enrolled in the Connecticut Teachers Retirement System which would permit her to retire in eight years.
Joseph Duffy is 47 years old. This is his first marriage. He was born and raised in East Hartford. He received a BA degree from the University of Hartford and a Masters Degree from Brooklyn College. He has been employed as an examiner at the Connecticut Department Revenue Services for the past fifteen years. He earns a yearly salary of approximately $60,000. He spent twenty-eight years in the Army Reserves and retired in August 2000. He formerly earned about $5,000 per year from his Army Reserves duties. He will receive an Army Reserves pension of approximately $700 per month beginning at age sixty.
Both parties are in good health. Mr. Duffy has hypertension but it is controlled with medication.
The court finds that neither party is solely responsible for the breakdown of the marriage. The breakdown began to take place about the time of the birth of their youngest child in1989. Resentments and emotional distance developed while physical intimacy diminished. The plaintiff feels that the defendant did not offer her the kind of help and emotional support that she needed. The defendant feels that the breakdown CT Page 12145 was caused more by outside forces that the parties were unable to deal with without conflict. When their youngest child, Carmen Bridget, was diagnosed with diabetes in about 1992 the parties were faced with significant stress which they were ill-equipped to handle. The plaintiff is controlling, rigid and uncompromising in her beliefs. The defendant is passive and submitting. The plaintiff dominated the family life of the parties. During the fall of 1996 the plaintiff began spending more and more time away from the home at night and on weekends. The defendant suspected that the plaintiff was having an affair but there was no credible evidence to support this suspicion. The parties continued to grow apart until December 1996 when the plaintiff decided that she wanted to dissolve the marriage. By February 1997 the plaintiff had filed the present action.
At first, the parties cooperated to try to make the divorce amicable. The plaintiff helped the defendant select a house in the area of the marital home where the defendant would be able to exercise extensive visitation. The plaintiff allowed the defendant to use a $7,000 insurance check as part of a down payment on this house. The defendant's paycheck continued to be sent by direct deposit into the joint account of the parties until April 1997. At that time the defendant opened an individual account and began putting his paycheck there. This ended any cooperation between the parties. About that time the plaintiff presented the defendant with a separation agreement which called for the plaintiff to have custody of the minor children with the defendant bringing the children to school every day and having visitation on weekends and during vacations. The defendant did not want to give up custody of his children. In order to gain leverage in the negotiations the plaintiff threatened to report to the Army Reserve and to the defendant's employer that the defendant had confided to the plaintiff that when he was a teenager he had had sexual contact with his sister. The defendant was frightened by this threat. Also, the defendant needed the continued cooperation of the plaintiff in order to complete the purchase of his new home. Finally, sometime before the defendant moved out in May 1997, the plaintiff accused the defendant of inappropriately touching their oldest daughter, Delia Bridget, when he got her up from bed in the morning before school. The plaintiff even brought Delia Bridget to her pediatrician Dr. Marilyn Bacon to be examined for evidence of assault. Dr. Bacon talked to Delia Bridget and examined her. Dr. Bacon was unable to confirm any evidence of abuse and suggested that Delia Bridget have some counseling. She did not make any referral to DCF and did not consider Delia Bridget to be in any danger. As a result of all of these events, the defendant agreed to give up custody of the children and to pay child support in the amount of $1,000 per month. The separation agreement did not get signed by both parties until July 2, 1997, just before the plaintiff was set to leave on a three week vacation in CT Page 12146 Portugal while the children stayed with the defendant.
When the plaintiff returned from vacation, the oldest child, Delia Bridget, confided in her mother that she had begun to believe that her father had touched her in inappropriate ways. However, the defendant continued to have unsupervised visitation with all of the children during August and September. This all changed in early October when the parties had a major argument about child support, the defendant's desire for joint custody, and the defendant's inability to pay for other expenses of the children. As a result, the defendant announced that he was going to hire a lawyer. He had been unrepresented. The day after this argument, the plaintiff made a complaint to the Middletown Police that the defendant had threatened the plaintiff with physical harm. The police took no action on this complaint but recommended to the plaintiff that she obtain a restraining order. That evening the plaintiff had the defendant care for the children. The next day he was served with a restraining order in which the plaintiff alleges that the defendant had made threats of physical violence to the plaintiff, that he had refused to give insulin to the youngest daughter, Carmen Melissa, and that the defendant had struck their son James. There is nothing in the application about abuse of Delia Bridget. The court rejects as not credible the plaintiffs explanation that there was a second page to the application which is missing from the court file. The restraining order was issued ex parte and then continued for six months on October 29, 1997 subject to visitation ordered in the dissolution case. The parties argued over visitation for several months but eventually agreed to pendente lite orders in the dissolution case giving the defendant visitation only in two public settings and at supervised visits at the home of a friend of the plaintiff. These visits began in April 1998 and ended in May 1998 when the defendant was accused by the plaintiff of having some inappropriate physical contact with Delia Bridget in front of the supervisor. The court does not find this allegation credible or supported by the evidence. The defendant has had no visitation with the children since June 1998.
The oldest child, Delia Bridget, is 16 years old. She is a Junior at Middletown High School where she takes honors courses and engages in a variety of extra-curricular activities. She had some health problems as a baby but is in good health now. Delia Bridget is an intelligent, energetic, wellspoken young woman who testified at some length. She was adamant that she wanted no contact with her father and opposed being required to engage in reunification therapy. She is convinced that the defendant touched her in an inappropriate way on several occasions over a long period of time. Her memory is that the defendant would stroke her breasts and buttocks when he was putting her to bed at night. She recalls that she would turn away from him and curl up facing the wall. She also CT Page 12147 described at least one instance when the defendant was taking her down from her top bunk that he had his hand on her breasts and she could feel that he had an erection. At the time, she did not think that these incidents were intentional and she did not tell anyone about them. However, she had a telephone conversation with her paternal grandmother sometime during the spring of 1997 in which her grandmother asked her if her father had ever "touched her the wrong way." She denied any such touching to her grandmother but then began to come to the growing conclusion that the defendant had been touching her in a sexually inappropriate way. This belief was reinforced by the visit to Dr. Bacon in June of 1997 when her mother saw what she felt was sexual contact. However Delia Bridget was not ready to label that contact as intentional by her father when she spoke with Dr. Bacon in June. She stayed with her father during her mother's three week vacation in Portugal in July 1997. During this time she became scared and wary of her father. She began to have nightmares about abuse by her father. When her mother returned from Europe, Delia Bridget, told the plaintiff that she was now convinced that the defendant had intentionally touched her breasts and buttocks in the past. She had always thought that these incidents were unintentional. But, now she was convinced that she had been wrong.
The defendant denied that he had ever had any intentional sexual contact with his daughter. The court makes no finding of fact on this point. This is not because it believes the defendant and disbelieves Delia Bridget. There is reason to question the defendant's denial. The defendant was not candid about the youthful indiscretion with his sister. He admitted to some kind of sexual contact with her but denied that he could remember anything about it. His sister testified similarly. The court does not believe either of them. However, the court does not find that this lack of candor taints all of the defendant's testimony. The shame that they must have felt regarding that incident is something that neither one wants to face again. It was easier for both of them to convince themselves that they could no longer remember any of the details of what happened. The same may be true regarding the defendant's alleged contact with his daughter. But there is not enough evidence to make a finding either way. It is also difficult to sort out the effect which the plaintiffs strong feelings on the subject may have had upon Delia Bridget. There is no question that the plaintiff has tried very hard to alienate the children from their father. Dr. Roeder feels strongly that alienation of the children has taken place. The plaintiff has kept the children from seeing their father for over two years. She believes that the children have no need to have any contact with their father and she has communicated that belief to the children consistently. For these reasons the court is unable to find that abuse took place or that it did not take place. The court agrees with the guardian ad litem, Richard Engelhardt, that it is best to handle this CT Page 12148 matter by allowing Delia Bridget to decide whether she will engage in a process to re-establish contact with her father.
Clearly, Delia Bridget is fearful of her father. She has had to deal with guilt even though she knows that whatever happened is not her fault. She has received therapy from Gloria Gerena, a social worker at Catholic Family Services. This therapy has been very helpful to Delia Bridget. The court was impressed with the testimony of Gloria Gerena and accepts her opinions about future treatment of the children. In summary, Ms. Gerena believes that Delia Bridget should continue with therapy in order to continue healing. She must be able to re-establish trust. However, Ms. Gerena does not feel that Delia Bridget should be required to engage in family reunification therapy with her father if she does not want to do it. Ms. Gerena believes that Delia Bridget should begin reunification therapy only when she decides that she is ready. The court agrees with Ms. Gerena and will not require that Delia Bridget engage in the therapy which will be part of the judgment for James and Carmen Melissa. However, Delia Bridget will be offered the option of participating in this therapy. It is the court's hope that, for her own good, that she will decide to participate.
James is 14 years old. He is a freshman at Middletown High School. He takes advanced classes and gets "mostly A's". He testified and expressed his preference not to be forced to visit his father. He feels that his father used excessive physical force when punishing him. There was at least one incident when the defendant punished James by spanking him on his bare buttocks while James's sisters watched. James was humiliated by this punishment. There was also a documented incident in 1995 where the defendant became frustrated by James's behavior and slapped him across the face leaving visible marks which were noticed when James went to school. The school reported the marks to the Department of Children and Families. An investigation was initiated during which the defendant admitted that he had struck his son. DCF did not take any action against the defendant. The defendant refused any DCF services.
Carmen Melissa is 10 years old. She is in the 4th grade. When she was about 3 years of age she was diagnosed with insulin-dependant diabetes. Her diabetes is described as "brittle". It is challenging to control and requires careful monitoring. She has been treated by endocrine specialists at UCONN, Yale and most recently at the Children's Medical Center in Hartford. Carmen Melissa needs a fixed schedule for meals and medication. She needs to avoid illness and stress. Exercise is good for her but needs to be monitored. She has the assistance of a nurse at school to help with monitoring and giving injections of insulin. But, Carmen Melissa is beginning to take responsibility for her own care. Full responsibility should occur by the time that she is in high school. CT Page 12149
The defendant played a substantial role in Carmen Melissa's care until he stopped seeing the children in June 1998. He demonstrated that he had the knowledge and concern to be able to care for her. The court does not credit the plaintiffs assertions that the defendant was unwilling or unable to provide the proper care to Carmen Melissa when she was under his supervision.
The court received testimony and a report from a Family Services Counselor, Kathi Proulx, who had performed an evaluation which was commenced on December 11, 1997 and completed on June 5, 1998. This information is important from an historical perspective but, because of the age of the report, Ms. Proulx's recommendations were not given weight in deciding this case.
Connecticut General Statute, Section 46-56 (b) provides that in making any order with respect to custody, "the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference. . . ." The court finds that it is in the best interests of James and Carmen Melissa to reestablish contact with their father through a process of reunification therapy as described and recommended by Dr. Roeder. It is regrettable that more than two years have gone by without any contact with the defendant. Some of the blame for this delay must be placed on the plaintiff who was not motivated to complete the evaluation by Dr. Roeder. Also, Dr. Roeder's busy schedule and the conflicting schedules of three busy children contributed to cause an unreasonable delay in the trial of this case. In any event, the children no longer know their father. They are afraid of him and will need to be reintroduced to him in a process of therapy where their safety can be guaranteed. It is crucial that the plaintiff not be involved in this therapy. No visitation will be ordered at this time apart from the reunification therapy. The nature and extent of future visitation will require further order of the court upon motion to modify made by the one or more of the parties.
It is undisputed that, apart from her refusal to acknowledge the importance of the defendant's role, the plaintiff has been a good mother to her children. That all of the children are good students is due, in large part, to the plaintiffs efforts to emphasize academics and effort in school. All of the children are excelling in other areas as well. The plaintiff has taken the children to Boston on Saturdays to participate in musical training at the New England Conservatory of Music. While in Boston they have explored the city and all it has to offer. The children have traveled to Puerto Rica several times to visit with their mother's family and to experience the culture of the country. The children are CT Page 12150 comfortable with the mother and enjoy being with her. Without doubt, the plaintiff is a loving, supportive, guiding mother and the children are motivated, successful, and happy. The court agrees with Dr. Roeder that the plaintiff should continue to exercise final decision making authority with respect to all parental issues with the exception of decisions pertaining to the defendant's contact with the children. Because the plaintiff is blind to the importance of the defendant in the life of her children, she can not be in control of the decisions relating to the children's contact with their father. However, the court disagrees with Dr. Roeder that the parties should have joint custody of the children. The reasoning of Dr. Roeder that joint custody is important for symbolic reasons does not apply in this case. The parties in this case have no contact with each other. There is no prospect that they will ever be able to agree on anything. Joint legal custody, even if symbolic only, is not in the best interests of the children.
All parties submitted child support guidelines worksheets. All arrive at different figures. The court accepts the calculations of the plaintiff that the correct child support payment from the defendant should be $255 per week. The court also agrees with the plaintiff that there should be an upward deviation of $25 per week reflecting additional expense due to the necessity of additional medical expense and food caused by Carmen Melissa's diabetes. The court rejects the plaintiffs claim for reimbursement to reflect the defendant's share of alleged child care expense. The plaintiff shows $57 per week on her financial affidavit for child care. There was no testimony about the necessity of child care. Given the ages of the children, the court is unable to conclude, without evidence, that child care is a necessary expense to enable the plaintiff to maintain her employment.
The plaintiff has medical insurance for the minor children through her place of employment. She wishes to be the sole provider of medical insurance because this results in better coverage than under the defendant's coverage. Should the plaintiff retire and should medical insurance no longer be reasonably available to her for the children, then the defendant shall provide medical insurance for the minor children as reasonably available though his place of employment. The parties will split unreimbursed medical costs in the percentages shown on the plaintiffs: the plaintiff shall pay 67% and the defendant shall pay 33%.
The plaintiff did not ask for alimony in her proposed orders. The defendant sought alimony from the plaintiff in the amount of at least $1 per year for at least ten years. The court will not award alimony to either party in this case because both parties have approximately equal earning capacity and education. Neither is in need of financial assistance from the other. CT Page 12151
At the time of the marriage the plaintiff owned a home at 58 Ten Acre Road in Middletown. This became the marital home where the plaintiff still lives with the children. The existing mortgage was paid for with marital funds earned by both parties and deposited into a joint account. The same is true of the cost of major improvements made during the marriage including a new garage built for approximately $15,000, the conversion of the old garage into a four-season room costing approximately $14,000, and the construction of a family room costing approximately $12,500. In 1987 the parties took out a $50,000 loan with American Bank to pay for these and other renovations and repairs. This loan was secured by a second mortgage on the plaintiffs property. When the defendant moved out of the house, approximately three months after the start of this action, the first mortgage had almost been retired and the second mortgage to American Bank had been paid down to approximately $18,000. In February 1998 the plaintiffs financial affidavit reflects that the house had a value of $110,000, the first mortgage had been pain in full, and the second mortgage had been paid down to approximately $15,000. That affidavit reflects that the plaintiff had other liabilities totaling $16,300.
On May 13, 1999 the plaintiff mortgaged the property to Option One Mortgage Corp. for $160,000. The plaintiff testified that she used approximately $100,000 from the proceeds of the mortgage proceeds to repay a friend, Claudia Osborne, who had purportedly made loans to her over the past two years. The plaintiff had no documentation for these loans or their repayment. Her present financial statement shows the house valued at $200,000 subject to the mortgage for $160,000. She shows other liabilities totaling approximately $78,000. The court rejects the plaintiffs explanation about why her financial situation had taken such a turn for the worse in the last 18 months since the date of her February 1998 financial affidavit. It is undisputed that the plaintiff received gross mortgage proceeds of $160,000 in May of 1999. After payment of closing costs and the American Bank mortgage she would have had net proceeds of approximately $140,000. The plaintiff claims that this money is gone. The plaintiffs story about unsubstantiated repayments of unsubstantiated loans from Claudia Osborne is totally lacking in credibility.
The defendant's financial picture is less complicated. He purchased a house for $111,000 in May 1997 when he left the marital home. He used $7,000 from the plaintiffs insurance settlement, some money he borrowed from his mother, and a mortgage for $99,900 with a variable rate. He sold the house on August 18, 2000 for $135,000 after the mortgage payments had escalated beyond his means. He realized approximately $24,000 from the sale. He used $12,000 to repay his mother and to pay attorneys fees. He CT Page 12152 has approximately $12,000 in savings. The defendant is living with a woman and paying a portion of the living expenses.
The defendant seeks an assignment of a portion of the marital home. The value of that home is found to be $200,000. It is a marital asset even though it was owned by the plaintiff at the time of the marriage. Based upon the improvements which were made to the home during the marriage which were paid for using joint funds, and further based upon the plaintiffs lack of candor concerning the financing which she has done with the home while the case has been pending, the court finds that the $40,000 equity in the home at the present time is a marital asset which should be assigned to the parties equally.
The parties have large joint debts which must be assigned. The largest is a debt to Attorney Winona Zimberlin for legal services which were performed on behalf of the parties to ensure that Carmen Melissa had the services of a school nurse when she went to school. The defendant has been making regular payments to Attorney Zimberlin but the plaintiff has not paid anything. This bill should be split equally between the parties with the defendant being given credit for the payments which he has already made.
There are fees due to the attorneys for the children, the guardian ad litem, and the court appointed family evaluator. The requests for fees that they have submitted are all found to be reasonable. The was no credible evidence presented which persuades the court that these expenses should not be split equally with credit being given for payments already made. The defendant filed a Motion for Contempt dated June 13, 2000 in which he alleges that the plaintiff obstructed the custody evaluations in violation of court orders and that the plaintiff should be ordered to pay for the evaluations herself. There was evidence that the plaintiff was not motivated to complete Dr. Roeder's evaluation and that she used the schedules and Carmen Melissa's diabetes as excuses to cancel or avoid making appointments. However, there was contrary evidence that the plaintiffs actions were reasonable. The evidence is insufficient for the court to find that the actions of the plaintiff were intentional in an attempt to frustrate the evaluation process. For this reason, the fees and credits listed on the Motion For Payment of Counsel Fees dated September 12, 2000 filed by Attorney Gillin will be divided equally with credit being given for prior payments.
Both parties have there own retirement planning. The parties are not in dispute that each party should retain his or her own retirement funds. The plaintiffs teacher's pension has a current value of $139,737 and her Aetna annuity has a value of $2,432. The defendant's Army pension and State retirement fund are shown on his financial affidavit as having no CT Page 12153 value. The plaintiff did not introduce evidence to dispute that claim. The defendant's Aetna deferred compensation plan has a value of $14,493.01.
The court orders:
1. Dissolution of the marriage.
2. Sole custody of Delia Bridget, James and Carmen Melissa to their mother. The defendant father shall have no right to visitation with the children apart from the reunification therapy described below.
3. The parties shall agree upon a family therapist to engage in family therapy with the defendant, James, Carmen Melissa (and Delia Bridget if she, in her sole discretion decides to participate). If the parties cannot agree upon a family therapist within 30 days after the date of this decision, the guardian ad litem, after consultation with Gloria Gerena, shall submit to the court within 10 days thereafter the names of three qualified family therapists. The court shall select one name from this list.
4. Within ten days after the selection of the family therapist as set forth above, therapy shall begin to start the process of reunification between the defendant, James, and Carmen Melissa. The plaintiff mother shall not be present during this therapy. Delia Bridget may participate in this therapy with her siblings at her sole discretion. Therapy shall begin with individual meetings so that the therapist can determine how much individual treatment will be required before beginning therapy in which the defendant participates with the children. Therapy shall continue on a weekly basis until further order of the court. The defendant shall pay all costs of this therapy not covered by insurance.
5. The defendant shall pay child support in the amount of $280 per week of which $25 is an upward deviation for additional medical expense and food for Carmen Melissa. Payment shall be by immediate wage withholding.
6. Neither party is awarded alimony.
7. The plaintiff shall provide medical insurance for the benefit of the minor children as reasonably available through her place of employment. Should the plaintiff retire and should medical insurance no longer be available to her for the children, the defendant shall provide medical insurance for the minor children as reasonably available through his place of employment. In accordance with the Guidelines, the plaintiff shall pay the first $100 per year per child for health expenditures not paid by health insurance; thereafter, the plaintiff shall pay 67% and the CT Page 12154 defendant shall pay 33% of health expenditures for the minor children not paid by insurance.
8. The plaintiff shall remain the sole owner of the real estate at 58 Ten Acre Road, Middletown, Connecticut subject to an equitable lien in the amount of $20,000 in favor of the defendant. This lien shall bear interest at 8% per annum from the date of this judgment. This lien shall be paid upon sale or refinance of the property or eight years from the date of the judgment which ever shall occur first.
9. The parties shall each pay one-half of the total original bill from Attorney Winona Zimberlin with the defendant being given credit for payments already made.
10. The plaintiff is solely responsible for the other debts shown on her financial affidavit. These debts are: Radio Shack, American Express, Bank Loan, Credit Union and her legal fees for this case. The plaintiff shall indemnify and hold the defendant harmless from these obligations. The defendant is solely responsible for the other debts shown on his financial affidavit. These debts are: MasterCard (1st Card), MasterCard (USAA), Sears, and his legal fees for this case. The defendant shall indemnify and hold the plaintiff harmless from these obligations.
11. The parties shall each pay one-half of the fees and costs of Attorney Susan Geenty, attorney for the minor children, the total of which is $3,954.50, one-half of which is $1,977.25. The plaintiff has paid nothing to Attorney Geenty. Therefore, she owes the full $1,977.25 which she is ordered to pay within 45 days. The defendant is given credit for his payment of $1,977.25. Therefore, the defendant owes nothing to Attorney Geenty.
12. The parties shall each pay one-half of the fees and costs of Attorney Patricia Gillin, attorney for the minor children, the total of which is $11,475. After giving the plaintiff credit for prior payments, the plaintiff owes $6,562.50 which she is ordered to pay to Attorney Gillin within 45 days. After giving the defendant credit for prior payments, the defendant owes $4,912.50 which the defendant is ordered to pay within 45 days.
13. The parties shall each pay one-half of the fees and costs of Richard Engelhardt, the guardian ad litem for the minor children, the total of which is $6,960. After giving the plaintiff credit for prior payments, the plaintiff owes $3,980 which she is ordered to pay within 45 days. After giving the defendant credit for prior payments, the defendant owes $2,980 which the defendant is ordered to pay within 45 days.
CT Page 12155 14. The parties shall each pay one-half of the unpaid fees of Dr. Keith Roeder, the total of which is $1,200. The plaintiff and defendant are each ordered to pay $600 to Dr. Roeder within 45 days.
15. The plaintiff shall remain the sole owner of her 1987 Mercedes, the contents of her home, her Teacher's Union checking and savings accounts, her Teacher's pension and her Aetna Annuity.
16. The defendant shall remain the sole owner of his 1987 Ford club wagon, his Webster Savings checking account, his Liberty Bank savings account, his certificates of deposit, his Army pension, his State retirement fund and his Aetna deferred compensation plan.
17. The defendant shall be entitled to take the youngest child as a dependency exemption as long as he is entitled to do so as a matter of federal law and as long he is current in his child support for the year that he seeks to take the dependency exemptions on December 31.
18. Within 30 days after the date of this judgment, the plaintiff is ordered to make available to the defendant, all photographs of the children in her possession. The defendant may copy these photographs, at his expense, and shall return the originals, undamaged, to the plaintiff within 30 days of receipt.
19. After consideration of the evidence and arguments of counsel, the defendant's Motion for Contempt dated June 13, 2000 is denied.
So ordered.
By the court,
Pickard, Judge